Filed 3/9/15  Gregory v. Abou-Samra CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CARLY GREGORY,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>MOUSTAPHA ABOU-SAMRA, M.D., et al.,<br><br>  Defendants and Respondents. | 2d Civil No. B253223<br>(Super. Ct. No. 56-2011-00405596-CU-MM-VTA)<br>(Ventura County) |

Carly Gregory appeals from a judgment awarding costs in favor of Moustapha Abou-Samra, M.D., and Moustapha Abou-Samra, M.D., a professional corporation.  Appellant contends the court erred in awarding respondent expert witness fees pursuant to Code of Civil Procedure section 998[1] because respondent's offer to compromise was neither reasonable nor made in good faith.  We affirm.

*Facts and Procedural History*

In December 2009, appellant underwent surgery for a brain tumor.  Dr. Aria Sabit was the surgeon, and respondent, Dr. Sabit's employer, acted as assistant surgeon.  Appellant subsequently filed a complaint against Dr. Sabit, respondent, and Community Memorial Health Care System (CMHCS) for negligence.  Dr. Sabit was

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

also sued for fraud and intentional infliction of emotional distress. The complaint was later amended to add a claim for punitive damages against Dr. Sabit, based on the allegation he intentionally misled appellant to believe her tumor had been removed. She also alleged that respondent knew the tumor had not been removed and failed to provide proper follow-up treatment.

Appellant settled with Dr. Sabit for approximately $530,000, and with CMHCS for $20,000. After these settlements, respondent served appellant with an offer to compromise pursuant to section 998. Respondent offered to waive all statutory costs incurred to date and all rights to sue appellant and her attorney for malicious prosecution, in exchange for a dismissal with prejudice in favor of respondent. Appellant allowed the offer to expire without acceptance.

Appellant continued to litigate the matter against respondent and both parties took several depositions. On the eve of trial, appellant dismissed the action against respondent without prejudice. Respondent filed a memorandum of costs seeking $12,866 in expert witness fees as the prevailing party. (§§ 998, subd. (c)(1), 1032, subd. (a)(4).) Appellant moved to strike and tax costs on the ground that respondent's offer to compromise was neither reasonable nor made in good faith.

Following a hearing, the court found respondent's section 998 offer to be both reasonable and in good faith. Judgment was entered in respondent's favor in the amount of $19,715, which includes the full $12,866 in claimed expert witness fees.

## *Discussion*

Appellant contends the court erred in ordering her to pay respondent's expert witness fees because the section 998 offer to compromise was "patently unreasonable." She also claims the court's ruling is based on its erroneous conclusion that respondent was not "automatically . . . liable" for Dr. Sabit's fraudulent conduct under the doctrine of respondeat superior. We are not persuaded.

A section 998 offer must be made in good faith in order to be valid. Good faith requires that the offer be reasonable under the circumstances of the case

2

and have a reasonable chance of being accepted. (*Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1112 (*Whatley-Miller*).) "Reasonableness generally 'is measured, first, by determining whether the offer represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial, discounted by an appropriate factor for receipt of money by plaintiff before trial, all premised upon information that was known or reasonably should have been known to the defendant,' and '[i]f an experienced attorney or judge, standing in defendant's shoes, would place the prediction within a range of reasonably possible results, the prediction is reasonable.' [Citation.]" (*Ibid.*) If an offer is found to be reasonable, the court must then determine whether "the offeree has reason to know the offer is a reasonable one." (*Id.* at p. 1113, quoting *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699.)

We review the court's findings as to the validity and reasonableness of the section 998 offer for an abuse of discretion. (*Whatley-Miller, supra*, 212 Cal.App.4th at p. 1113.) There was no abuse of discretion here. Appellant failed to meet her burden of establishing the offer to compromise was unreasonable or not in good faith. Although she claimed the dismissal was not based on the merits of the case, the court "was not required to accept that statement at face value and could reasonably conclude that the dismissal represented an acknowledgment of the tenuous nature of appellant's claims against respondent." (*Bates v. Presbyterian Intercommunity Hosp., Inc.* (2012) 204 Cal.App.4th 210, 221-222.) The court also recognized that respondent's offer had substantial value to appellant because its acceptance would have protected her against future litigation and absolved her of responsibility for the very costs she now challenges. (*Id.* at p. 222.)

The trial court also acted within its discretion in finding that appellant had reason to know respondent's offer was reasonable. Appellant received over $500,000 in settlement proceeds and her medical bills were paid by private insurance. (Civ. Code, § 333.1.) Moreover, her noneconomic damages were limited to $250,000.

3

(Civ. Code, § 333.2.) Although she claims she had reason to believe respondent could be found liable for Dr. Sabit's fraud under the doctrine of respondeat superior, she did not sue respondent under this theory or name him in the causes of action for fraud and intentional infliction of emotional distress.

In any event, the court did not err in determining that respondent would not be "automatically liable" for Dr. Sabit's fraudulent conduct. Appellant notes "that an employee's willful, malicious and even criminal torts *may* fall within the scope of his or her employment for the purposes of respondeat superior . . . ." (*Lisa M. v. Henry Mayo Newhall Memorial Hosp.* (1995) 12 Cal.4th 291, 296-297, italics added.), But liability in this context is not a foregone conclusion. The issue can be resolved as a matter of law only when the relevant facts are undisputed and give rise to no conflicting inferences. (*Id.* at p. 299.) The issue is ultimately whether the employee's tortious conduct was foreseeable (*ibid.*), and appellant fails to show that Dr. Sabit's allegedly fraudulent conduct was foreseeable as a matter of law. The court thus did not abuse its discretion in concluding that the mere possibility respondent might be held vicariously liable for Dr. Sabit's alleged fraud was insufficient to render the offer to compromise unreasonable.

The judgment is affirmed. Respondent shall recover costs on appeal.
NOT TO BE PUBLISHED.


                                                        YEGAN, J.
We concur:



        GILBERT, P. J.



        CHANEY, J.*

---

\* Assigned by the Chairperson of the Judicial Council.

4

Rebecca Susan Riley, Judge

Superior Court County of Ventura

_____

Glenn J. Campbell, for Appellant.

Benjamin F. Coats, Melanie J. Ely; Engle, Carobini & Coats, fir Respondents.